## Chase *versus* Gates.

By the Stat. of 1821, chap. 39, sect. 1, one of the modes of foreclosing a mortgage of real estate was by an entry "with the consent in writing of the *mortgager or those claiming under him.*"

When the mortgager has conveyed the right of redemption, the consent to an entry for foreclosure must be obtained from the party who claims under him.

If one, to whom such right of redemption has been transferred, shall convey the same, taking back a mortgage, the entry, to foreclose the first mortgage, in order to be effectual, must be by consent of the last mortgagee.

An indorsed note, lodged with a depositary to be delivered to the beneficiary when a specified incumbrance shall be removed from the property for which it was given, becomes the absolute property of the beneficiary, upon the removal of the incumbrances.

Upon such a note, the incumbrance having been removed, the beneficiary may maintain an action, although the depositary wrongfully refuses to surrender the possession of it.

On Report from *Nisi Prius*, Tenney, J.

Assumpsit, by the indorsee against the maker of a promissory note of $250, dated in 1846.

One Sanborn, after having mortgaged real estate to Moor, conveyed the same by warranty deed to Herring. Herring conveyed it to H. Bradbury, taking back a mortgage for the

purchase money. H. Bradbury then conveyed by warranty to J. Bradbury.

In order to foreclose the first named mortgage, Moor entered upon the land in 1838, by the written consent of J. Bradbury, and in 1843, assigned his mortgage, with quitclaim of the land, to the plaintiff, who in 1846, conveyed the land by warranty to the defendant, and took in part payment therefor the note now in suit. This note was not made payable to the plaintiff, but to White & Co., who wrote their name upon the back of it, and held it in their hands for the plaintiff, upon an agreement, that it should not be delivered to him until Herring's claim upon the land should be settled or adjusted, and that, if the defendant should be obliged to pay any thing to dislodge Herring's claim, the amount so paid should be allowed upon the note. In order to dislodge Herring's claim the defendant was compelled to pay $250, in 1850. White & Co. refused to surrender the note to the plaintiff. It was brought into Court by them under a *subpoena duces tecum.*

The case was submitted to the Court for a legal decision.

*McCrillis* and *Crosby,* for the plaintiff.

*Paine* and *Prentiss,* for the defendant.

HOWARD, J. — Sanborn having mortgaged the premises to Moor, in 1835, subsequently conveyed them, by deed of warranty, to Herring, who conveyed to H. Bradbury, and took from him a mortgage to secure the consideration for the conveyance. H. Bradbury conveyed with covenants of warranty to J. Bradbury in 1837. In order to foreclose his mortgage, under the provisions of the statute of 1821, chap. 39, sect. 1, Moor, in 1838, procured J. Bradbury's consent in writing to an entry for that purpose. The statute provided that the entry to foreclose should be " by process of law, or *by the consent in writing of the mortgager or those claiming under him,* or by the mortgagee's taking peaceable and open possession of the premises mortgaged, in presence of two witnesses." Moor quitclaimed to the plaintiff in 1843.

It is contended that such entry of Moor was effectual to foreclose the mortgage at the expiration of three years from its date. But, at that time, Herring held the entire interest of the mortgager to Moor, subject only to the right of J. Bradbury to redeem the equity from him, and his consent in writing to the entry was not obtained. The consent in writing to an entry for foreclosure was not sufficient, under the statute of 1821, unless given by the mortgager, or those claiming the entire equity under him.

The entry of Moor, not having been in conformity to any of the provisions of the statute then in force, did not effect a foreclosure as against Herring. By his conveyance in 1843, to the plaintiff, he transferred his interest as mortgagee, only, in a mortgage not foreclosed or extinguished.

The note in suit was given as part of the consideration for the conveyance of the premises, in 1846, by the plaintiff to the defendant, with general covenants of warranty. In order to secure the defendant against the asserted claims of Herring, to an equity of redemption in the estate, the note was made payable to White & Co. or order, and to be held by them for the benefit of the plaintiff; but "not to be negotiated, or given up to him until the claim or right of said Herring shall be settled or adjusted; and in case said Gates shall be held to pay any thing to said Herring, to remove, or get a release of said claim, or shall be put to any trouble or cost thereon, the amount thereof shall be allowed upon said note." An agreement in writing was given by the plaintiff to the defendant, containing these stipulations, and bearing even date with the deed and note.

It appears, that the plaintiff did not settle or adjust the claim of Herring, and that the defendant, on January 30, 1850, about six months after the note, in terms, became payable, and by advice of counsel, paid $250, to settle and extinguish Herring's claim upon the estate, and took from him a deed of release and quitclaim. As this claim upon the estate appears to have been legal and just, and the amount paid to remove it is not pretended to be excessive or unreasonable, and as the

payment was made according to the agreement of the parties, that sum should be "allowed upon the note."

The claim of Herring constituted the only incumbrance contemplated by the parties, and when that was removed, the legal and equitable interest in the note was in the plaintiff. It was in the hands of White & Co., indorsed for his benefit. The terms and conditions of their trust having been accomplished, they could not legally control or retain the note. The plaintiff could institute a suit upon it, in his own name, and upon the statement of facts, is entitled to judgment for the remainder after deducting the payment before mentioned.