PACKARD et al. *v.* BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY.

RAILROADS — *authority to issue county bonds to aid in their construction.* Municipal corporations have the power to make a subscription to the stock of a railroad company, payable in the bonds of the municipality, upon such terms and conditions with reference to the prosecution of work on the railroad as may be deemed desirable, to provide against loss, but the board of county commissioners have no power to make such subscription in behalf of the county without the approval of the legal voters expressed at an election called pursuant to law.

COUNTY COMMISSIONERS — *special meetings of — how called.* A special meeting of the board of county commissioners cannot be legally held without due notice to every member of the board. *Quere,* whether an order for a special meeting should not be entered of record at a regular meeting by which the public at large, as well as the members of the board, may have notice of the time and the nature of the business to be transacted.

*Trustee named in a proposition to vote bonds — agent of both parties.* A trustee to whom, pursuant to the terms of a proposition to vote bonds, submitted to the vote of electors, is delivered the bonds of a county, becomes the agent of both the board of county commissioners and the railway company, and as such agent is charged with the duty of holding the bonds subject to the conditions of the contract of subscription.

*Modification of a proposition to vote bonds, after notice of election — effect of.* A proposition to vote bonds, modified one week before the election in such a manner as to become a new proposition, cannot be legally voted upon at that election, as there is not remaining sufficient time before the election in which to give the notice required by law.

PRACTICE — *injunction against misapplication of public funds.* A bill to restrain the misapplication of public funds cannot be brought by two or more tax-paying complainants on their sole behalf, when they have no other interest in the question to be determined than that which arises from a liability to pay taxes. A bill for this purpose may be maintained if the complainants sue on behalf of themselves and all others in the same situation.

PLEADING. Where a bill in such case is filed by tax-paying complainants on their sole behalf, if the defendants in their answer raise the objection f want of proper parties complainant, the court cannot disregard it.

### Appeal from District Court, Jefferson County.

THE bill was filed by George F. Packard, B. F. Woodworth and John Clark against the board of county commissioners of Jefferson county, the Golden City and South Platte Railway and Telegraph Company and Francis E. Everett. The bill alleges that the complainants are resident tax payers of Jefferson county; that the Golden City and South Platte Railway and Telegraph Company was incorporated January 18th, 1872, by Charles C. Welch, W. A. H. Loveland and E. L. Berthoud, that on the sixth day of April thereafter the company filed a supplemental certificate, that the capital stock by the original and supplemental certificates was fixed at $30,000; that on the 17th day of December, 1872, said company presented to Beasley and

Wannemaker, two of the county commissioners of Jefferson county, a petition duly signed requesting the board of commissioners to order an election to vote upon a proposition to subscribe $50,000 to the capital stock of the company, payable in the bonds of the county, said petition fixing the time for the delivery of the bonds as follows, to wit: $16,000 when one-third of the road-bed is graded, extending from Golden City to the South Platte at or near Littleton; $17,000 when two-thirds are graded, and the balance when the entire road-bed is graded, with bridges and cross-ties provided.

This petition was presented at a special meeting called for the purpose, only two members being present, and the third not notified either directly or indirectly. In pursuance of the petition the two commissioners ordered an election to be held January 17th, A. D. 1873, to vote upon the proposition; and thereupon adjourned to meet December 18th, 1873, on which day the said two commissioners again met, and adjourned without transacting any business, except to order notice to be given to the judges of election. The bill then alleges that the order for the election made by said two commissioners was not in fact made the 17th day of December, 1872, as shown by the records of the board, but was made and entered of record on the 18th of December, 1872, and that the publication of the notice of election was made for the first time on the day last named in the *Colorado Transcript*; that on the 6th day of January, A. D. 1873, a regular meeting of the board was held which was adjourned until the 9th day of January, 1873, on which day they again met, when said company submitted a supplemental proposition in which the company agreed that it would, within nine months from the time of voting said bonds, complete the grading of its road-bed one-third of the entire length of the line, and the balance of grading within twelve months from the time of such vote, and that it would complete the whole of the grading of the road-bed, and bridge and tie the same ready for the laying of rails, within eighteen months from the date of the vote; and, if

the said company should fail to complete the grading of the
first third of its road-bed within nine months from the date
of said vote, the company should forfeit all the bonds ; but,
in case of compliance therewith, the said company to receive
$16,000 of the bonds ; and, if it should fail to complete the
grading of the second third of its road-bed as above speci-
fied within twelve months from the date of the vote, the
said company should forfeit the remaining portion of said
bonds, but, if the company shall complete the grading of
the second third of its road-bed, it should receive $17,000 more
of said bonds ; and, if having complied with the above, the
said company should fail to complete the grading of its
road-bed, and bridge and tie the same preparatory to lay-
ing the rails within eighteen months from the date of said
vote, the company to forfeit the balance of $17,000.    The
supplemental proposition provided further that, if the
delivery of the bonds should be delayed by the board of
commissioners, the trustee or the process of any court, " the
time taken up by such delay or hindrance should not in
any such event be counted against the company on the com-
putation of the time or times hereby agreed upon for the
completion of the different parts of said work, but the said
company shall have an extension of the time or times for
such completion of the same number of days so taken up
or consumed by such delay or hindrance."    This agreement
was to be taken as part of the original proposition made by
the company.    That the supplemental proposition was
approved by the board of commissioners on the 7th day of
January, 1873; that on the 18th of December, 1872, the
commissioners.caused to be published for the first time a
notice of an election to be held in said county, on the 17th
day of January, 1873, and the 8th of January, 1873, the said
supplemental proposition was added to said notice as part of
the original proposition of said company ; but was only pub-
lished for the space of nine days previous to the election ; that
the election was held in pursuance of said notice on the 17th
day of January, 1873, at which a majority of the votes cast
were in favor of said subscription ; that a special meeting of

the board of commissioners was held on the 18th day of March, 1873, at which the said Beasley and Wannemaker only were present, at which meeting it was ordered that the chairman of the board be authorized to sign the bonds of the county voted in aid of said company, and to affix the seal of the county thereto, and to deliver said bonds when so signed and sealed, and attested by the clerk of said county, to Francis E. Everett, trustee, to hold said bonds and deliver the same to said company, in accordance with the provisions of the contract between the county and said company, and that said bonds should bear date the 18th day of March, A. D. 1873; that at a special meeting of said board held March 18th, 1873, one of the commissioners, viz., Warrington, was not present and had no notice of the meeting; that on the day last mentioned the bonds of said county for $50,000 were issued by said board of commissioners, and the coupons signed in the absence of said Warrington and placed in the hands of said Everett, as trustee, for the use of said company; that no subscription has ever been made to the capital stock of said company by said board of county commissioners, on behalf of said county, of said $50,000, or any other sum; that said company has never delivered any of its capital stock to said county; that at the time of voting said bonds, and at the time said bonds were delivered to said trustee, no location or survey of said road had ever been made; that at the time said election was ordered by said commissioners, and when the election was held, the capital stock of said company was only $30,000.

The bill prays for an injunction restraining said board of county commissioners from making any subscription to the capital stock of said company, and the said Everett from delivering the bonds of said county to said company, or any other person on its behalf, and the said county from levying any tax to pay said bonds or the coupons, and the said company from recovering said bonds or coupons from said Everett, trustee, and from negotiating the same; that the bonds and coupons may be surrendered up to be

canceled, and that the board of county commissioners may be perpetually restrained from making any subscription to the capital stock of said company.

The defendants in their answer deny that the capital stock of said company was only $30,000 at the time of voting the bonds, and aver that, before the subscription was made, and on the 9th day of November, 1872, the company increased its capital stock to $400,000, and that a certificate of the increase was filed in the office of the territorial secretary January 21, 1873, and that the $50,000 of the capital stock of said company has been delivered to and accepted by the board of commissioners in payment for said bonds; aver that the complainants are not the only tax payers in Jefferson county, and that they have no right to maintain the suit; deny that no location or survey of said line of road was ever made; aver that such location and survey was made before the commencement of this suit, and that all the acts of the commissioners and of the company in the premises were in strict conformity to law.

The parties hereto filed stipulations that the following facts exist, and may be considered by the court as duly proved:

*First.* That the said Golden City and South Platte Railway and Telegraph Company was incorporated, as alleged in the bill of complaint, with the capital of $30,000.

*Second.* That by a vote of the voters of the county of Jefferson, on the 17th day of January, A. D. 1873, it was voted to issue $50,000 of the bonds of said county in exchange for the like amount of the stock of said company.

*Third.* That the bonds have been issued and placed in the hands of Francis E. Everett, one of the defendants, as trustee selected by the board of county commissioners and the said railway and telegraph company, in accordance with the submission, submitted to the voters of said county. It is also admitted that on the 9th day of November, 1872, the said Golden City and South Platte Railway and Telegraph Company, by its stockholders, increased the capital stock of said company, according to the provisions of the statute,

from $30,000 to $400,000, and that on said 9th day of November, A. D. 1872, Charles C. Welch, who was the president of said company, made a certificate of such increase of stock, and swore to the same, but that such certificate was not filed with the secretary of the territory of Colorado until the 21st of January, A. D. 1873.

That at the time the board of county commissioners made such submission to the voters of said county, it was represented to the board of county commissioners that the capital stock of said railway and telegraph company was $400,000, and such submission was so made on the basis of a capital stock of $400,000.

That before the commencement of the suit, the board of county commissioners of Jefferson county authorized J. Wannemaker, the chairman of such board, to receive from the said railway and telegraph company the said $50,000 of the capital stock of said company, and that, after such proceedings, the said railway and telegraph company did deliver to the said board of county commissioners the said $50,000 of capital stock of said company, and the same was received before the commencement of this suit, and was duly signed and sealed ; such stock was delivered without the consent or knowledge of the complainants.

That at the time of the submission by the board of county commissioners to the voters of the county, there had been no stock of the company issued, and none was issued until the time of the issue of the said $50,000 of the said stock to the said county of Jefferson.   At the hearing the district court dismissed the bill at complainant's cost, and they appealed.

Messrs. BROWNE & PUTNAM, for appellants.

Mr. HENRY M. TELLER, for appellees.

HALLETT, C. J.   The authority conferred upon counties, cities and towns to subscribe to the capital stock of railroad companies, and to issue bonds in payment therefor, is to be

exercised by and with the approval of the legal voters of the county, city or town so subscribing, expressed at an election, to be called by the proper authority, of which thirty days' notice must be given. Rev. Stat. 134.

No doubt can arise as to the power of any such corporation to make its subscription to the stock of a railway company upon such terms and conditions of payment, with reference to the prosecution of work on the railway and the completion of the same, as may be considered necessary or desirable to provide against loss. *Portland Railroad Co. v. Hartford*, 58 Me. 23. By whom the terms of the subscription are to be settled on behalf of the county, city or town, has, however, become a subject of controversy in this case, and this is a question to be determined upon the language of the act. It will be observed that the board of county commissioners have no power to begin the proceeding, and can only act upon the demand of one hundred voters for an election to be held, after which the election is to be called " to approve and vote the subscription of stock and authorize the issue of bonds." Authority to subscribe to the stock is, by the first section, conferred upon the board of commissioners, to be exercised under the direction of the electors of the county, according to the provisions of the second section, from which it appears that the people are to act directly in the matter, so far as it is possible for them to do so. The board of commissioners are to perform those acts of subscribing to the stock and issuing the bonds, which cannot be done by the people except by and through their proper representatives, and all other matters are left to the electors. It will not be contended that bonds issued without authority from the voters as to rate of interest and time of payment would be valid, and all other essential features of the contract of subscription must be equally within their control. By the express words of the act the electors are to approve and vote the subscription to the stock, and this cannot be done without fixing the amount, the terms of payment and all the substantial parts of the contract. The commissioners, acting on behalf of the

county, must of necessity arrange these details in the first instance, in order that the electors may pass upon them, but there is nothing in the act which requires them to do more. Indeed the act requires express authority from the people as to all material matters, and of course the instructions received by the board must be obeyed. In this view it becomes necessary to inquire whether the matter of subscription to the stock of the railway company was properly submitted to the voters of the county, for if it was not so submitted, the board of commissioners was without authority to subscribe to the stock.

The proposition made by the railway company was submitted to two commissioners of the county convened in special session, and an order was made by them, directing that an election be held on the 17th day of January thereafter, at which the electors of the county should approve or reject it. The third commissioner was not present at the meeting, nor was he notified thereof, and the meeting was for that reason without authority of law. Regular meetings of the board of commissioners in each county are held on the first Monday in January, April, July, and October in each year, and special meetings may be held at such other times as, in the opinion of the board, the public interest may require. Rev. Stat. 168. The act is silent as to the manner of calling special meetings, and there are strong reasons for requiring an order entered of record at a regular meeting, by which the public at large, as well as the members of the board, may have notice of the time and the nature of the business to be transacted. If, however, it should be conceded that the board may meet upon the call of the chairman or otherwise, a sound rule of public policy requires that all members of the board shall have notice of the meeting. *People* v. *Batchelor*, 22 N. Y. 129.

It would seem, therefore, that the election was not ordered by a duly constituted board of commissioners, but the action of the board at the regular meeting in January may be regarded as curing the irregularity, and it is not necessary to dwell upon this point. The proposition as first made by

the railway company and submitted to the people, was for $50,000 of the bonds of the county, to be prepared and placed in the hands of a trustee selected by the county and the company, and by him delivered to the company, $16,000 upon the completion of one-third of the road-bed; $17,000 upon the completion of another third of the road-bed, and the remaining $17,000, upon the completion of the entire road-bed. No time was provided for doing the several parts, or the whole of the work, nor was any thing said as to the consequences of a default in the conditions of the contract. At the January meeting of the board, the railway company put in a supplemental proposition for the avowed purpose of making more definite the terms and conditions of the original proposal and of restricting and limiting the time for finishing the road-bed. The time for building the several sections of the road was declared to be nine, twelve and eighteen months respectively from the date of election, and if, according to the usual intendment of the law, the first proposal was for a reasonable time in which to do the work, we have nothing to indicate that the periods fixed by the last proposal were different from the first. We are not advised by the record as to the length of line, the labor of construction, or any matter upon which an opinion may rest as to the time within which the road must have been built, in order to comply with the first proposal, nor is it alleged in the bill that the times mentioned in the second proposal are variant from the first, and therefore we cannot assume that any change was wrought in this particular. It was further declared in the supplemental proposition that, upon failure to complete any section of the road within the time specified, the bonds payable thereon should be forfeited to the county, but this added nothing to the original proposition, under which the company acquired no right to the bonds, until the section of the road upon which the same were payable was built. It was not necessary to declare that the railway company should forfeit bonds to which no right had been acquired or could be acquired, until the work was finished under the first proposition. It was also provided that if the

delivery of the bonds should be delayed by the board of commissioners, the trustee or the process of any court, "the time taken up by such delay or hindrance should not, in any such event, be counted against the said company on the computation of the time or times hereby agreed upon for the completion of the different parts of said work, but the said company shall have an extension of the time or times for such completion of the same number of days so taken up or consumed by such delay or hindrance."

Without adverting to the effect of delay occasioned by the action of the board of commissioners or of the courts, it will only be necessary to consider the effect of the provision as to delays occasioned by the action of the trustee. As we have seen, there was nothing in the original proposition as to the default of the trustee, who, being the choice of both parties, may be regarded as the agent of each, to hold the bonds subject to the conditions of the contract of subscription. Upon the principle which has been applied to auctioneers in the analogous case of a deposit by a purchaser subject to the condition that a good title to the property purchased shall be made, it seems that the trustee under this proposal would hold the bonds for the use of the county in the first instance and until the completion of the work on that section whereon they are payable, and afterward for the use of the railway company. In *Burrough* v. *Skinner*, 5 Bur. 2639, which was an action by a purchaser against an auctioneer for a deposit, the court was clear, that the action would lie upon failure of title, for the defendant was a mere depositary and bound to hold the money until it should appear to whom it properly belonged. If the condition were performed, the right of the vendor to the deposit would be equally clear. Upon this principle, one for whom a promissory note had been lodged with a depositary, to be delivered upon the removal of an incumbrance from certain real property, after performance of the condition, was allowed to recover upon the note, notwithstanding the refusal of the bailee to deliver it. *Chase* v. *Gates*, 33 Me. 363.

If, then, the trustee would hold the bonds for the county until performance of the condition, and after that event for the railway company, the loss or misapplication of the bonds by the trustee would fall upon the county or the company, to be determined by the time when it occurred, as whether before or after the performance of the condition. If for instance, referring to the $16,000 of bonds to be first delivered, the trustee should lose or misapply them before one-third of the road-bed was completed, the county would bear the loss, but if the same should occur after that event, the company would bear it and so also as to the other installments. According to the decisions of the supreme court, bonds issued to railway companies, under acts such as ours, are negotiable securities, which, if lost, or misapplied by the trustee, would be valid against the county in the hands of an innocent party. *Moran* v. *Miami Co.*, 2 Black, 722.

If, then, under the original proposition, the status of the parties has been correctly stated, we have no difficulty in saying, that the proposition was materially changed by the amendment thereto. For, by the amendment, a delay or failure of the trustee to deliver bonds according to the terms of the proposition relieved the company from prosecuting the work during the continuance of such delay or failure, and this was not the case before the amendment was made. This modification of the original proposition may be regarded as a withdrawal of that proposition *pro tanto*, and the substitution of another therefor, and of course this must defeat all proceedings pending at the time of the amendment. To require the voters to pass upon a proposition after it has been withdrawn or essentially changed would be useless, because it cannot then become the basis of an agreement between the parties. The record shows that the proposition was changed in the manner indicated about one week before the election, at which time it became a new proposal, and as there was not sufficient time before the election in which to give the notice required by the statute, the voters could not legally act upon it at that election.

So much has been said in explanation of the rights of the parties, in order to show that the bill is not without merit. There is, however, a defect of parties, which we are unable to overlook, and which will defeat the relief sought in this action.

The right of taxable inhabitants and property holders to resort to equity to restrain misuse of public property and misapplication of public funds has been denied in New York and elsewhere, but we incline to the opposite view, which is also supported by many authorities, in which the reasons upon which our judgment rests are given at length. *Baltimore* v. *Gill*, 31 Md. 375 ; 2 Dillon's Corporations, § 731.

But where, as in this case, the complainants have no other interest in the question to be determined than that which arises from a liability to pay taxes, the bill should be filed by the complainants on behalf of themselves and all others in the same situation. The general rule would require that all the tax payers in the county should be made parties to the suit, but as this is impracticable, the law will admit one or more to sue on behalf of themselves and others. Story's Eq. Pl., § 97 ; *Phillips* v. *Hudson*, 2 Ch. App. Cases, 243 ; *Barr* v. *Denniston*, 19 N. H. 170 ; *Whitney* v. *Mayo*, 15 Ill. 252.

The bill in this case is obnoxious to the rule, having been filed by appellants for themselves alone, and as the objection was made in the answer, there can be no reason for disregarding it. Story's Eq. Pl., § 75.

In such cases, however, it is enough to dismiss the bill without prejudice, leaving the parties to adjust their rights in another action, and the decree of the court below will be so modified in this court, and costs will be allowed to appellees.

*Decree modified.*