Wilson, J.
Plaintiff McIntyre, with four other residents, property, owners and taxpayers of the city of Colorado Springs, suing for themselves, as well as for all other residents, property owners and taxpayers of the city, commenced this action to restrain the hoard of county commissioners of the county of El Paso, in which the city of Colorado Springs is situate, from the erection of a county courthouse upon a certain public square within the city, which it was claimed had been dedicated and used for twenty-nine years as a public park. The complaint is very lengthy, and hence, we shall insert only such portions of it as are requisite to a proper understanding of the issues and the questions presented and determined. It recites, that in the year 1871, the Colorado Springs Company, a private corporation, laid off and platted as a town site for the city of Colorado Springs a certain tract of land of which it was the owner; that it filed in the office of the county clerk and recorder of the county a plat of said town site, showing the blocks, lots, streets, avenues, alleys and reserved squares, to which plat was attached an acknowledgment of the vice president of the company, as required by law, and then proceeds:
“ Fourth. That all of the blocks designated upon said plat were divided into lots except a certain block designated on said plat as block number sixty-two (62) lying two blocks *80 north of Pike’s Peak Avenue and marked on said plat as Acacia Place, and except a certain block designated on said plat as block number one hundred and twelve and lying two blocks south of Pike’s Peak Avenue and marked on said plat as Alamo Square, neither of said two last named blocks having lots designated thereon. That said Pike’s Peak Avenue runs east and west in said city and is equidistant from either end of said platted ground; that said blocks designated as Acacia Place and Alamo Square are of equal size with all the other blocks within said platted ground, being about four hundred (400) feet square and each bounded by streets on the four sides thereof.”
“ Fifth. That at the time said plat was filed as aforesaid, said company laid off said ground as the original town site of the city of Colorado Springs, there being then only a few if any residents within the present limits of said city, it being the intention of said the Colorado Springs Company to place upon the market for sale the lots so designated and shown upon said plat.”
“ Sixth. That, with the purpose of inducing the public to purchase the lots as platted, as aforesaid, which it immediately thereafter began selling to divers and sundry persons with reference to said plat, said Alamo Square and Acacia Place were reserved from sale, and it was then and there given out by said company and so understood by the public generally and by those purchasing lots from said company in said platted ground that both of said blocks of ground would be kept and reserved for the public for public parks, they having been .reserved upon said plat as then provided by statute.
“ Seventh. That soon thereafter both of said blocks of ground, Acacia Place and Alamo Square, were taken possession of by the city authorities of said Colorado Springs for parks and were improved by the said city authorities at public expense for parks and have ever since been maintained at public expense by the said city authorities for park purposes, being beautified by lawns, shade trees, public walks, water- *81 fountains and seats for the accommodation of the general public, and the public for more than twenty (20) years last past has held the open, exclusive, continuous, uninterrupted and peaceable possession of both of said blocks of ground for park purposes and are now so using the same.”
“ Eighth. That the city of Colorado Springs now has a population of about 25,000, and the two blocks of ground aforesaid are the only parks in said city centrally located and are convenient and necessary to the inhabitants thereof and the general public for the purposes to which they have been continuously devoted and the public hold and own an irrevocable easement in said blocks for park purposes.
“ Ninth. That heretofore on or about the day of April, A. d. 1899, the defendants Sinton, France and Doran conspiring with the mayor and city council of the city of Colorado Springs to destroy the park situate on the said block of ground known as Alamo Square, persuaded and induced said mayor and city council to pass an ordinance in words and figures following, to wit:
“ ‘ An ordinance to provide for the relinquishment of all rights in and to block numbered 112, in the city of Colorado Springs, county. of El Paso and state of Colorado, to the county of El Paso, upon certain terms and conditions, that the same may be used as a site for a courthouse for the said county.
“ ‘ Be it ordained by the city council of the city of Colorado Springs :
“ ‘ Section 1. Whereas, the Colorado Springs Company, a corporation, filed in the office of the clerk and recorder of El Paso county, Colorado, a plat of the original town of Colorado Springs, and reserved blocks sixty-two (62) and one hundred and twelve (112) for public buildings, company building and parks; and
“ ‘ Whereas, the county of El Paso, in the state of Colorado, is about to erect a new courthouse for said county;
“ ‘Now therefore, the city of Colorado Springs does hereby relinquish all its right or rights, in and control over *82 said block, numbered one hundred and twelve (112) in favor of the said county of El Paso, for the purpose of permitting the said county of El Paso to erect a courthouse upon said block of ground for said county; the city reserving the right to enter in and upon the ground for maintaining its sewer and water systems, and the expense to be borne by the county of El Paso for making any necessary changes upon said ground.
“ 4 Provided, however, that only so much of said block shall be used by the county of El Paso, as may be necessary for the purpose of erecting thereon a courthouse consisting of one building, and for necessary paths, and roadway for ingress to said courthouse and egress therefrom; and that all of the residue and remainder of the said block, numbered one hundred and twelve (112), not so used as above stated, for the erection thereon of said courthouse, shall be appropriately-kept, properly planted and maintained as a public park, at the expense of the said county of El Paso, and the same shall remain a public park forever:
“ ‘ Provided, further, that if the said block of ground, or any part of it, shall at any time be used otherwise than for the purpose of .building and maintaining a courthouse, thereon, unless it be for the future enlargement of said courthouse, then and in that case, all the rights and interests of the city of Colorado Springs, in and to - said block of ground, hereby granted to the said county of El Paso, shall immediately revert to, and become the property, rights and interests of the said city of Colorado Springs, as the same existed immediately prior to the passage of this ordinance; and
“ 4 Provided, further, that, if the said county of El Paso shall fail or neglect to maintain said grounds in a suitable condition for park purposes, as hereinbefore set forth, then, and in that case, the said county shall pay to the said city of Colorado Springs, each and every year such failure or neglect shall continue, the sum of five thousand ($5,000) dollars which said sum shall be used and applied by the said city of Colorado Springs for the purpose of maintaining said block *83 of ground for park purposes, and any surplus remaining of the said five thousand dollars, after making necessary expenditures upon said block of ground, shall be applied to the proper fund of the city of Colorado Springs to be used for the maintenance of the parks of said city.
“ ‘ Sec. 2. The mayor of the city of Colorado Springs is hereby appointed as a commissioner to carry out 'the provisions of this ordinance, and to execute all conveyances necessary or proper in carrying out the provisions of this ordinance. All such contracts, agreements and conveyances shall be attested by the city clerk of the city of Colorado Springs, under the corporate seal of said city.’ ”
It then recites the execution by the mayor of the city, in pursuance of this ordinance, of a deed, conveying to the county the premises in question, with the provisos and upon the conditions specified in the ordinance, to wit, that no part of the ground should be used by the county for any other purpose than the building and maintaining of a courthouse thereon, and providing further:
“ That if the said county of El Paso shall fail or neglect to maintain said grounds in a suitable condition for park purposes, as hereinbefore set forth, then, and in that case, the said county shall pay to the city of Colorado Springs each and every year during which said failure or neglect shall continue, the sum of five thousand dollars ($5,000) which said sum shall be used and applied by the city of Colorado Springs for the purpose of maintaining said block of ground for park purposes, and any surplus remaining of the said five thousand dollars, after making the necessary expenditures on said block of ground, shall be applied to the proper fund of the city of - Colorado Springs to be used for the maintenance of the parks of said city.”
The complaint further recites the execution, on the same day, of a deed by the Colorado Springs Company, conveying to the county all of its right, title and interest in and to the premises. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a *84 cause of action, and on various special grounds, the nature of which will appear during thé course of this opinion. The demurrer was sustained, and, the plaintiffs electing to abide by their complaint, judgment of dismissal was rendered, and the cause is brought to this court for review.
It is conceded in their argument, by counsel on both sides, that there was a dedication of the square to public use, and that it is sufficiently pleaded. The contention between them is as to the restrictions, if any, on its use and control by the city authorities, and as to whether the proposed use is inconsistent with the purposes and objects of the dedication. We are relieved, too, from the necessity of considering whether the dedication was a statutory one, or one at common law, or whether the right which the city authorities possessed to control the square, and the people of the city to use it, is acquired by prescription. Under the facts of this case, the principles which control and determine are the same, whatever may have been the manner of dedication. ■ It is not disputed, either, that the city of Colorado Springs acquired, and has the right to control and regulate the use of this square, as trustee for the people of the city, and is bound to perform the duty. In such case, it is well settled by the universal current of authority that the municipality holds the dedicated ground for the use and benefit of its citizens, for the purposes only of its dedication. The trustee cannot impose upon it any servitude or burden inconsistent with these purposes, or tending to impair them ; neither can it alienate the ground, nor relieve itself from the authority and duty to regulate its use. We cite a few of the very many authorities to this effect. Warren v. Mayor, etc., 22 Ia. 351; City of Llano v. County of Llano, 5 Tex. Civ. App. 132; Jacksonville v. Ry. Co., 67 Ill. 541; McCullough v. City & County of San Francisco, 51 Cal. 418; Princeville v. Austin, 77 Ill. 327; County of Harris v. Taylor and Gabel, 58 Tex. 690 ; Rutherford et al. v. Taylor et al., 38 Mo. 315; Church v. City of Portland, 18 Ore. 74; Kreigh et al. v. City of Chicago, 86 Ill. 410; City of Alton v. Ill. Transportation Co., 12 Ill. 54; Le Clerq v. Trustees of Gallipolis, 7 Ohio, part 1, 217.
*85 There is no question that the complaint sufficiently pleads a dedication of this square for the purposes of a public park. A dedication may be made without writing; it may be made by acts from which the intention to dedicate may he rightfully presumed, and with which any other presumption would be inconsistent, for instance, a town proprietor who exhibits upon his plat a plat or square of ground not subdivided into lots, and who states to intending purchasers of lots that this square or plat is reserved for a public park, or for any other public use, and who upon the face of these representations sells lots, thereby dedicates the plat to such public use as fully and effectually as if he had expressly done so by deed. When the dedication is accepted, the proprieter cannot be heard thereafter to say that such was not the intent. To hold otherwise would be to allow him to practice a palpable fraud upon the public, and to take advantage of his own wrong. Alton v. Ill. Transportation Co., supra; Rutherford et al. v. Taylor et al., supra; Abbott v. Mills, 3 Vt. 521; Washburn, Easements & Servitudes (4th ed. p.), 239.
If the dedication of the square in controversy was solely for the purpose of a public park for the use and benefit of the citizens of Colorado Springs, there is no question that it is wholly without the power of the city authorities to convey it or permit it to be used for the erection thereon of a county courthouse; it would be a use utterly inconsistent with that for which it was dedicated.
The term “ park,” in its ordinary and usual significance, imports a plat of ground in a city or town set apart for ornament, a place which the residents of the municipality may frequent for pleasure and exercise or amusement. It is, besides, conducive to health, furnishing to the citizens of crowded cities a place where they may breathe the pure air, untainted by smoke and noxious gases. Certainly, it cannot be contended that the erection of a large building in such a place, however massive, grand or beautiful may be its architecture, to be used by either city or county for the carrying on of its business, is consistent with this use. Besides, if the ground *86 is dedicated for a park, the citizens, the beneficiaries of the trust, are entitled to the use of the whole. If the trustee may be permitted to say that any particular part of it is not needed nor necessary for the dedicated purpose, then it may say that the larger portion of it is not so needed, and, in fact, defeat the whole purpose of the dedication. These'views are fully sustained by the authorities which have been cited above.
The complaint does not state that there was marked upon the recorded plat any designation of the plat or square in question, except “Alamo Square.” It alleges no words on the plat from which any dedication for a specific purpose might be inferred. The ordinance of the city, however, which is set forth in the complaint, recites in its first section that this block, with one other, was reserved for “public buildings, company buildings and parks.” This may or may not be true, but as counsel for both parties in their briefs argue the case upon the basis of its truth, we may infer that the recital is correct. This being true, counsel for the county strenuously urge that the proposed use is not inconsistent with that of its dedication, but is, on the contrary, a use expressly permitted by the terms of the dedication. This, he maintains upon the ground that the county courthouse is a public building. A sufficient and complete answer to this is, that, under no rules of construction, could the words “public buildings,” in the sense and under the circumstances there used, be construed to mean other than public buildings of the town or city. The town proprietors were laying out a town site; they made their subdivisons, plats and their reservations solely with reference to the building up of a town, and to the promotion of its interests. True, a county courthouse is a public building, but so is a state capitol, a penitentiary, an insane asylum, schoolhouses, and, in fact, all buildings erected and owned by state, county or municipal authorities. If the contention of defendant is correct, then, without consulting the wishes of the municipality, or of its people for whose use this ground was dedicated, any buildings of the character which we have mentioned might *87 be erected upon this ground. .If its theory is correct, there was no necessity to secure a deed from, or the passage of an ordinance by, the city, giving the county the right which it attempted to confer.
The defendant insists, however, that a municipality holds and controls its property subject to the paramount authority of the legislature. This is true as a general proposition, but there are restrictions upon and limitations of this legislative power. The rule is, that in cases of dedication of ground for specific use, in case of abandonment or failure to utilize the property for the specified use, the property reverts to him who dedicated, or attempted to do so. Surely, it cannot be contended that, in such case as this, the legislature would have the power to destroy these property rights of an individual. This claim of defendant is based upon the provisions of the 7th subdivision of section 4403, Mills’ Ann. Stats., originally enacted in 1877, which gives municipal authorities the power “ to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds, and vacate the same, and to direct and regulate the planting of ornamental and shade trees in such streets, avenues and public grounds.’’ If there was a dedication of this ground for public use as a park, it was long prior to 1877, long after the rights of the beneficiaries of this trust had accrued. It was made, if at all, subject to the law as it existed before 1871, and we do not find in the old statutes a provision similar to the one upon which the defendant relies. By the statutes of 1868, section 1, article 3, p. 606, town authorities were given the power to vacate any street, avenue, alley or sidewalk, and abolish the same; but we do not find any authority given for the vacation of parks. 'Waiving this question, however, and conceding that the statute of 1877 controls; it is of no avail to defendant in this case, because there is no attempted exercise of the power there given. The complaint in this case is not of any attempted vacation of this square or park, but of an attempted appropriation of a portion of it for a use *88 inconsistent with, the purpose of the dedication, and of an entire alienation and abdication by the city — the trustee of the people — of its right to control the possession and regulate the use of the square.
It is insisted, however, that, in any event, the demurrer was properly sustained on the ground that the plaintiffs have not the legal capacity to maintain the suit. This is based upon the doctrine that a private action cannot be maintained where the injury is purely a public one, unless the individual seeking relief is able to show some damage special or peculiar to himself. This well settled legal principle is not applicable to cases like the one at bar. On the contrary, the doctrine established by the great weight of authority is that a resident taxpayer of a municipality has the right to maintain a suit to prevent the unlawful disposition by the municipal authorities of the money or property of the town, and to restrain the diversion of property in his town from any public use, in which he shares, to which it has been dedicated. Davenport v. Buffington, 97 Fed. Rep. 234 ; Rowzee v. Pierce, 40 L. R. A. (Miss.) 403; Crampton v. Zabriske, 101 U. S. 601; Cummings v. City of St. Louis et al., 90 Mo. 261; 2 Dillon, Municipal Corps. §§ 653, 915; Carter v. Portland, 4 Ore. 339; Packard v. The Board, 2 Colo. 350.
The reason upon which the rule is based is thus aptly expressed by Mr Dillon:
“ If the property or funds of such a corporation be illegally interfered with, ordinarily the action to prevent or redress the wrong should be brought by and in the name of the corporation. But if the officers of the corporation are parties to the wrong, or, if they will not discharge their duty, why may not any inhabitant, and particularly any taxable inhabitant, be allowed to maintain a suit to prevent or avoid the illegal act. Such a right is especially necessary in the case of municipal and public corporations ; and if'it be denied, they are liable to be plundered and the taxpayers and property owners on whom the loss will eventually fall are without effectual remedy.”
*89 This doctrine is not in conflict with the rulings of our supreme court in the cases to which we have been cited. Whitsett v. The Union D. & R. Co., 10 Colo. 443; Railway Co. v. Foley, 19 Colo. 280; City of Denver v. Girard, 21 Colo. 450.
' The principle announced in these, applies to cases in which the city council in the exercise of its acknowledged legal power confers a license for some unusual use of a street, or concerns nuisances. The principle which controls in this case has been affirmed in accordance with the views which we have expressed by our supreme court. In Packard v. The Board, supra, the court said :
“ The right of taxable inhabitants and property holders to resort to equity to restrain misuse of public property and misapplication of public funds has been denied in New York and elsewhere, but we incline to the opposite view, which is also supported by many authorities.”
The doctrine there announced has never been controverted in this jurisdiction.
The city is not a necessary, party to this suit. It is an action to restrain the commission of a trespass upon the public property dedicated for the use of the people of the municipality. Adequate relief can be given, and all issues determined, without bringing the city in as a party. It is the county authorities who are seeking to use the property in question-for a purpose foreign to its dedication, and the suit against them is in the nature of a suit by a cestui que use to prohibit a violation of the trust, or a destruction of the right of user.
Entertaining these views, it necessarily follows that, in our opinion, the court erred in sustaining the demurrer. The judgment will therefore be reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed.