In re the **ONE BANCORP SECURITIES LITIGATION.**

**Civ. No. 89–0315 P–C.**

United States District Court,
D. Maine.

Feb. 12, 1993.

William Hammer, Ernst & Young, New York City, Kevin Libby, Portland, ME, for Ernst & Young.

Robert Alan Wake, Asst. Atty. Gen., Augusta, ME, for Maine Bureau of Banking.

Alexander Bennett, Arnold & Porter, Washington, DC, Anne Dufour, Verrill & Dana, Portland, ME, for One Bancorp, Pape, McFarland, Furey, Bell.

Jeffrey Golan, Barrack, Rodos & Bacine, Philadelphia, PA, Jeffrey Thaler, Berman & Simmons, Lewiston, ME, for Steven Cooperman.

Van Oliver, Andrews & Kurth, L.L.P., Dallas, TX, for Official Committee of Unsecured Creditors.

## MEMORANDUM AND ORDER DENYING MOTION FOR RECONSIDERATION

### GENE CARTER, Chief Judge.

In this class action the Court preliminarily approved a settlement among Plaintiffs, the Plaintiff class, and The One Bancorp Defendants on August 1, 1991. (Docket No. 68). That settlement provided that The One Bancorp and the insurer of its executives pay separate amounts into an escrow account for distribution to Plaintiffs in return for a full release and dismissal of all the claims that had been or could be made against those Defendants by Plaintiffs and by Ernst & Young in this matter. (Docket No. 66). After hearing on October 21, 1991, the Court entered a judgment directing that the settlement be consummated in accordance with its terms and dismissing the claims against The One Bancorp Defendants. (Docket No. 85).

The claims of Plaintiffs and the class against Defendant Ernst & Young were left pending by the October 1991 settlement, but on June 9, 1992, Plaintiffs, the class and Ernst & Young entered into a stipulation of settlement to which the Court gave its preliminary approval. (Docket No. 117). On June 2, 1992, an involuntary petition for an Order for Relief under Chapter 11 of the Bankruptcy Code was filed against The One Bancorp in the District of Connecticut. Shortly thereafter The One Bancorp filed a voluntary petition for reorganization in the District of Massachusetts.

A suggestion of bankruptcy was filed in this action, (Docket No. 128), and the Court was asked by Plaintiffs to determine that the automatic stay provided in 11 U.S.C. § 362(a) did not apply to the settlement effected here and to grant final approval. (Docket No. 130). The Court initially declined to do so, (Docket No. 134), but on Plaintiffs' motion for reconsideration, filed November 12, 1992, (Docket No. 136), the Court found the automatic stay not to apply and approved the stipulation of settlement filed in June. (Docket No. 140). The Court entered a judgment of dismissal of the claims against Defendant Ernst & Young. (Docket No. 141). Now before the Court is a motion by the Official Committee of Unsecured Creditors in the bankruptcy action, representing bondholders of The One Bancorp, for reconsideration of the Court's order of dismissal. (Docket No. 142).

The Committee argues that the as yet undisbursed settlement proceeds of The One Bancorp settlement constitute property of The One Bancorp's bankruptcy estate under 11 U.S.C. § 541. Therefore, the Committee suggests, the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a)(2), prevents Plaintiffs from attempting to reach the settlement proceeds until the stay is lifted. Under section 541 property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the cast." *Id.* Despite the broad scope of this definition, the Supreme Court has stated that not all property in which the debtor holds an interest is to be included. *United States v. Whiting Pools, Inc.* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). For example, the Court explained that Congress "intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title." *Id.* at 204 n. 8, 103 S.Ct. at 2313 n. 8.

■ The nature and extent of the debtor's interests in property are to be determined by reference to state law. *In re Turner*, 29 B.R. 628, 630 (D.Me.1983). In most jurisdictions, the deposit of money or a deed in escrow creates an equitable interest in the grantee, and on full performance of the conditions according to the escrow agreement, full legal title vests in the grantee as well. 28 Am.Jur.2d Escrow § 10 (1966). Although the Maine Law Court does not appear to have spoken recently on the subject, in 1851 the court stated that when a note is deposited in escrow, once the terms and conditions of the trust are accomplished, the legal and equitable interests in the note are in the beneficiary of the escrow agreement. *Chase v. Gates*, 33 Me. 363, 366 (1851). Nothing in the Law Court's more recent opinions dealing with escrow accounts indi-

cates that it would not follow that same general rule.

Here, the Committee concedes that the settlement among Plaintiffs, the class, and The One Bancorp Defendants was consummated before the filing of The One Bancorp's petition in bankruptcy. The Official Committee of Unsecured Creditors Motion for New Trial or Reconsideration of Court's Ruling on November 25, 1992, at 5 (Docket No. 142). Since the conditions of the escrow intended to protect any interest of The One Bancorp in the fund have been fulfilled, it no longer has an interest in the fund despite the fact that the monies once belonged to it.

The Committee contends, nevertheless, that The One Bancorp retains an interest in the proceeds because "the Settlement may possibly be set aside, in whole or in part, as an [*sic*] contract entered into to defraud creditor's [*sic*] of the Debtor," *id.* and that potential claim constitutes an interest in the property of the estate. *Id.* The Bankruptcy Code enables a trustee to avoid transfers that constitute either actual or constructive fraud. 11 U.S.C. § 548(a); *In re Roco Corp.*, 701 F.2d 978, 981 (1st Cir.1983). To establish constructive fraud, the trustee must show that the debtor "received less than a reasonably equivalent value in exchange for such transfer" and "was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer." *Id.* The Committee does not suggest that The One Bancorp engaged in actual fraud by entering into the challenged settlement. Rather it argues that "there is a strong issue as to whether the Plaintiffs' releases constituted reasonably equivalent value or adequate consideration for the Debtor's payment of the substantial Settlement Proceeds." Creditors' Committee Memo, at 6.

In approving the settlement, after assessing Plaintiffs' claims and the risks inherent in litigation, the Court specifically found that on the record before it, the settlement which the Committee seeks to challenge was "a fair, reasonable, just, and appropriate disposition of [the] claims" against The One Bancorp. Judgment of Partial Settlement and Dismissal, at 2 (Oct. 21, 1991). The Court, therefore, has already made the factual inquiry required by section 548 and determined that The One Bancorp received fair exchange in the settlement by obtaining a release of its liability in return for the funds paid into the escrow fund for the Plaintiffs. In other words, the Court has already determined that The One Bancorp received reasonably equivalent value for the funds it transferred to Plaintiffs in the months preceding the filing of the petition in bankruptcy. Since the Committee cannot establish that a fraudulent transfer took place, it cannot establish that the monies paid in settlement of these claims are part of The One Bancorp's bankruptcy estate. Thus, the automatic stay does not operate with respect to these proceedings regarding the settlement proceeds.

The Committee also challenges the settlement on the grounds that it fails to provide adequately for The One Bancorp's bondholders. Almost two years ago this Court held that the Plaintiff class would consist only of the purchasers of The One Bancorp common stock during a fixed period. *In re One Bancorp Securities Litigation*, 136 F.R.D. 526, 531–32 (D.Me.1991). The bondholders have, therefore, never been parties to the litigation.[1]

---

1. The Committee has cited *In re Pittsburgh & Lake Erie R.R. Co. Securities Litigation,* 543 F.2d 1058 (3rd Cir.1976) in support of its contention that the bondholders should rightfully be considered beneficiaries of the settlement. In that case, the court found that a nonparty pledgee of stock had standing in a shareholders' derivative suit to object to a settlement entered into by the minority shareholder plaintiff class and the defendants. The pledgee in the case was an indenture trustee with fiduciary obligations to public bondholders. The court overturned the settlement upon the objection of the pledgee.

In *In re Pittsburgh & Lake Erie,* the court found that the nonparty indenture trustee had standing because "the equitable interest of a pledgee of stock is sufficient to confer standing in a Rule 23.1 derivative action." *Id.* at 1067. This case is not a Rule 23.1 derivative action, and The Committee is not a pledgee of stock. *In re Pittsburgh & Lake Erie,* therefore, does not support The Committee in the threshold matter

**4**

Moreover, in August 1991, when notice of the settlement was mailed to class members and a summary notice was widely published in local and national newspapers, no bondholders came forward seeking to intervene in the action. Rule 24 of the Federal Rules of Civil Procedure permits intervention in ongoing actions in certain circumstances "[u]pon timely application." Even if this motion for reconsideration were to be considered a motion to intervene under Rule 24, it cannot be considered a "timely application." *See Banco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1231 (1st Cir.1992). The motion comes sixteen months after the bondholders should have had notice of the impending settlement of the plaintiffs' claims and over a year after the entry of judgment of partial settlement which disposed entirely of the claims against The One Bancorp. The parties here worked painstakingly to achieve settlement in this very complex matter. If intervention were permitted at this late date, a great deal of time, effort, and expense would have been wasted to the prejudice of Plaintiffs. This prejudice is, of course, compounded by the intervening bankruptcy of Defendant The One Bancorp. *See, id.*

The bondholders may still bring their own suit against The One Bancorp. Their rights have not been compromised by the settlement effected here. Of course, they, like Plaintiffs, would be prejudiced in any such suit by the bankruptcy of The One Bancorp. Their prejudice in this regard, however, is the result of their own delay in not seeking to vindicate their claims sooner. Given all the circumstances, the Court finds that the Committee's motion for reconsideration should not be considered a timely application for intervention. *See, id.* The Committee, therefore, has no standing to challenge the Court's order or to seek a new trial in this matter.

Accordingly, it is ORDERED that the Official Committee of Unsecured Creditors'

of whether it should be allowed to challenge the settlement here. Moreover, the indenture trustee in *In re Pittsburgh* came forward with its objection to the settlement after publication of

Motion for a New Trial or Reconsideration, be, and it is hereby, DENIED.

SO ORDERED.

the notice to the class and filed written objections before the date set for the hearing on the proposed settlement. Its objection was, therefore, timely, unlike the objection filed here.